IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**DOMINIC JOSEPH BROUSSARD**                                            **PLAINTIFF**

**VERSUS**                                        **CIVIL ACTION NO. 1:15cv430-HSO-RHW**

**CAROLYN W. COLVIN,**
**ACTING COMMISSIONER OF SOCIAL SECURITY**                     **DEFENDANT**

## REPORT AND RECOMMENDATION

By Counsel,[1] Plaintiff Dominic Joseph Broussard filed this action December 31, 2015, seeking judicial review of the denial of Broussard's claim for Social Security disability insurance benefits. Broussard contends the ALJ used incorrect legal standards in assessing his disability, determining the weight to be given his treating physicians' opinions, and in analyzing the combination of his impairments, and erred in weighing Broussard's credibility and finding him capable of working. [15]

### Facts and Procedural History

Broussard filed an application for disability benefits July 23, 2012, alleging he had been disabled since March 3, 2009,[2] at age 30,[3] due to low back and leg problems resulting from an on-the-job back injury. [11, pp. 225-228] At the time of his injury, Broussard was a supervisor-driver for Delta Sanitation, where he supervised five employees, cleaned portable toilets and lifted dumpsters and handicapped units. He stopped working April 11, 2009. [11, pp. 228, 237]

---

[1]The record indicates Broussard has been represented by counsel throughout the hearings on his claim.

[2]Broussard's application for disability states he became disabled March 3, 2009 [11, p. 225]; his state workers' compensation claim indicates his injury occurred March 6, 2009 [11, p. 214], and he testified he was injured March 9, 2009. [11, p. 103] The workers' compensation claim was compromised and settled April 9, 2012 for a total of $279,364.34 including medical, disability settlement payments. [11, p. 214].

[3]Broussard was born in September 1978. [11, pp. 103, 122, 197]

Broussard's application was denied initially on October 25, 2012, and on reconsideration on January 4, 2013. [11, pp. 122-129, 130-136]

On August 19, 2013 ALJ Judge Douglas A. Wright conducted the first hearing in Broussard's case. [11, pp. 96-121] Broussard testified at this hearing that his most severe problem was his back; he also had pain in his legs and feet and numbness in his feet. At that time, he said he could not bend over to make the bed, could not stand long enough to cook, and could barely vacuum due to pain. He was still driving then, but only short distances. Broussard testified he had a car accident two weeks before the 2013 hearing but had received no treatment because he had no insurance. He had also been referred to Singing River Mental Health for counseling after a May 2013 suicide attempt, but had no appointment as of the August hearing. [11, pp. 101, 107-115] In a nine-page decision rendered October 16, 2013, Judge Wright concluded that Broussard had severe impairments of degenerative disc disease of the lumbar spine with radiculopathy and sacroilitis status post laminectomy, and could not return to his former work. However, he further found Broussard was not disabled under the Social Security Act because he remained capable of performing sedentary work with some limitations. The Appeals Council reviewed the matter at Broussard's request, and remanded the case to the ALJ on April 17, 2014 for evaluation and consideration of Broussard's mental impairment and substance abuse disorder and determination of whether he is disabled considering all impairments including drug addiction and alcoholism. [11, pp. 152-154]

On February 2, 2015, ALJ Charles C. Pearce conducted a second hearing in the case. [11, pp. 40-64] Broussard testified he is single, has two children by different mothers, a 4-year-old son who lives with him, and a 16 year old daughter who lives with her mother. He and his son lived with his aunt and uncle at the time of the first hearing, and he lived with a roommate in February 2015. Broussard dropped out of school after the ninth grade, but got his GED in 2004.

In 2009 he was a supervisor/driver for a waste management company, but he stopped working when he got hurt in March of that year.  His problems are with his lower back (he has had two surgeries) and his hands.  Any activity causes him pain.  His medications help but do not totally relieve his pain, and they make him sleepy and tired, so he sleeps a lot during the day.  Broussard testified his hand pain started in the last three years; he has numbness and intense pain from the top of his fingers to mid-palm, and his hands get cold several times a day, with these episodes lasting five minutes to a half hour. [11, 44-49, 101-107]   He stated he was diagnosed as bipolar in May 2013, was hospitalized three times in 2013 for suicidal thoughts, stabilization of medications and detox, and started counseling with Dr. Fox at Singing River Mental Health in November 2014.  [11, p. 50-51, 59]  At this second hearing, Broussard testified he does household chores, cleaning and laundry, but has to take a break after 15-20 minutes; he shops for groceries weekly,[4] takes his medications on his own, attends to his own personal needs and hygiene, makes his bed, cooks, does dishes, and can vacuum or sweep, but it hurts.  He naps two to three times a day from a half hour to 3 hours or more.  When he is awake he plays on the phone, tries to read or watches movies.  He goes to bed around 8:00 p.m., and sleeps three to six hours a night.  He testified his doctor suggested he not pick up more than 15 pounds, he has trouble bending and has to stretch in the mornings and sometimes during the day "depending on [his] depression."  [11, pp. 52-58, 116-117]

     Vocational Expert Kelly Hutchins reviewed Broussard's past relevant work history as a sewage worker which is heavy work, skill level 2; construction worker which is heavy work, skill level 4; and construction supervisor which is medium work, skill level 8.  Ms. Hutchins testified one of Broussard's age (then 36), education (GED) and work history, who is capable of

---

[4] He testified his aunt drives him to the store; that he stopped driving about three years ago after he got a DUI, and because of foot numbness.  Other records indicate the DUI was in January 2013. [11, p. 447]

light work that does not expose him to unprotected heights or hazardous machinery, involves only occasional crouching, crawling, stooping, kneeling, balancing and climbing stairs but no climbing ladders, ropes or scaffolds, who is limited to simple, well-defined tasks with simple job instructions and simple work decisions; occasional interactions with the general public but no dealing with people as customers, and who can work around, but not supervise others and should not be required to communicate frequently with coworkers or supervisors, who can adjust to a work routine not highly exacting or complex or dangerous and can adjust to gradual change in work routine, would be capable of working as a silver wrapper, storage clerk or advertising distributor, all of which are light work with a skill level of 2 and significant numbers of all these jobs are available in the economy. Hutchins testified that adding a four-hour restriction on sitting, standing or walking would eliminate the advertising distributor job, but the other two jobs would remain viable. The jobs would not be available with additional requirements of 30-minute breaks after 15 minutes of work, or three breaks of 30 minutes to three hours during the workday, or having to put an easily distracted worker back on task twice an hour. [11, pp. 61-63]

On March 25, 2015, ALJ Pearce issued a thirteen-page decision finding Broussard has not been under a disability as defined in the Social Security Act from March 2009 through the date he was last insured. [11, pp. 23-35] The Appeals Council denied Broussard's request for review on October 26, 2015 [11, pp. 5-9], and Broussard filed the action now before the Court.

<u>Standard of Review</u>

Judicial review of a final decision of the Commissioner of Social Security is limited to determining whether substantial record evidence supports the Commissioner's factual findings, and whether such findings are reached through the application of correct legal standards. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir.

1994).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  It is more than a scintilla, but less than a preponderance.  *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990).  The Court reviews the entire record to determine whether substantial evidence supports the Commissioner's decision.  *Villa*, 895 F.2d at 1022.  Credibility of witnesses and conflicts in the evidence are issues for resolution by the Commissioner, not the Court.  It is not the Court's prerogative to substitute its judgment for that of the Commissioner or to re-weigh the evidence.  *Audler v. Astrue*, 501 F.3d 446, 447 (5th Cir. 2007); *Harris*, 209 F.3d at 417 (quoting *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995)); *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988) (a finding of "no substantial evidence" is appropriate only if no credible evidentiary choices or medical findings support the decision); *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990).  Factual findings supported by substantial record evidence are conclusive and must be upheld.  *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995).  The Court may reverse a decision of the Commissioner if it is based upon faulty legal analysis, but should accept the Commissioner's legal conclusions if they are within reasonable meanings of the statutory or regulatory language.  *Chevron, U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 841-44 (1984).  Absent a finding that the decision is unsupported by substantial evidence or that the Commissioner applied an incorrect legal standard, the Court must affirm the Commissioner's decision.  *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).  The decision "is accorded great deference and will not be disturbed unless the reviewing court cannot find substantial evidence in the record to support the ... decision or finds that the Commissioner made an error of law."  *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (footnotes omitted).

Analysis

The Social Security Act defines disability as "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months..." 42 U.S.C. § 423(d)(1)(A). It was Broussard's burden to prove a disability which precluded him from engaging in substantial gainful work. *Masterson v. v. Barnhart*, 309 F.3d 267, 271 (5th Cir. 2002); *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991); *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987). The "suffering of some impairment does not establish disability; a claimant is disabled only if [he] is 'incapable of engaging in *any* substantial gainful activity'" *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992).

ALJ Pearce applied the correct law for determining disability – following the five-step sequential evaluation process set out at 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). Step One requires determination of whether the claimant is engaging in substantial gainful activity, *i.e.*, work that involves significant physical or mental activities and is usually done for pay or profit. The ALJ found Broussard has not engaged in such activity since his alleged onset of disability in March 2009. At Step Two, the ALJ determines whether the claimant has a medically determinable impairment, or combination of impairments, which meets the duration requirement and is severe, *i.e.*, which significantly limits his ability to perform basic work activities. ALJ Pearce found Broussard has severe impairments of lumbar spine disorder, affective disorder, personality disorder, and substance addiction disorder. Judge Pearce considered the cumulative effect of Broussard's obesity, but found "no suggestion from medical or other evidence that work limitations were called for," so obesity was found not to be a severe impairment.

Step Three requires determination of whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Unless the impairment/combination of impairments is of such severity and meets the duration requirement, the analysis continues to Step Four. Judge Pearce found Broussard does not have an impairment or combination of impairments which meets or medically equals the severity required to meet or equal a listed impairment.

At Step Four of the evaluation, the ALJ must determine (1) the claimant's residual functional capacity, *i.e.*, his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments, and (2) whether he can still perform the requirements of his past relevant work. If claimant can perform the requirements of his past relevant work, he is not disabled, and the inquiry ends there. The ALJ found Broussard can no longer perform his past work as a waste company driver/supervisor, construction worker or construction supervisor.

Based upon the entire record, including all Broussard's alleged symptoms to the extent they are reasonably consistent with objective medical evidence and other evidence, as well as opinion evidence, ALJ Pearce found at Step Five that Broussard had the residual functional capacity to perform light work,[5] with the added restrictions included in his hypothetical question to Vocational Expert Hutchins. Judge Pearce further found Broussard's medically determinable impairments could reasonably be expected to cause his alleged symptoms, but that his statements concerning the intensity, persistence and limiting effects of the symptoms were not entirely credible. For some six pages of his single-spaced 13-page decision, ALJ Pearce carefully examined the record evidence beginning with Broussard's on the job injury in March 2009 and

---

[5] Light work involves lifting a maximum of 20 pounds, and frequent lifting/carrying up to 10 pounds. Jobs in this category may require "a good deal of walking or standing, or ... sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567.(b)

detailing his subsequent treatment, physicians' clinical findings, medical evaluations, tests and medications through July 7, 2014. Every paragraph is replete with record citations, amply demonstrating the ALJ's diligence in examining and summarizing the record evidence.

Although Broussard asserted five issues which he claims require reversal of the ALJ's decision, he argued only that he was entitled to a finding that he was disabled for a closed period from the date of his injury until April 8, 2011, when he was released from care by Dr. Terry Smith and Dr. Edward Aldridge. [15, pp. 2-3, 5-6] The undersigned agrees with the Commissioner that Plaintiff's failure to brief any other issues constitutes an abandonment of those issues, hence the Court will address only the argument Plaintiff actually presented. In its order [3] establishing a briefing schedule and setting out briefing requirements, the Court clearly required that the Plaintiff separately address each issue upon which he relies for reversal of the Commissioner's decision, supporting each contention "by specific reference to the portion of the federal court record relied upon and by citations to statutes, regulations and cases supporting plaintiff's position." [3, p. 2] Plaintiff's three-paragraph argument contains no record references or citations. Instead, Plaintiff simply states he was taken off work by treating physicians following a March 9, 2009 work-related injury and "remained so disabled" until his release from the care of Dr. Smith and Dr. Aldridge in (*sic*) April 8, 2011. Thus, he contends, he was entitled to a finding that he was entitled to Social Security disability benefits for that period.

While Dr. Smith's records document that he saw Broussard on April 8, 2011, and his notes state Broussard is "nearing maximum medical improvement," Dr. Smith's examination found only mild tenderness to palpation of the back, normal strength, sensation, reflexes and gait. [11, p. 379] In fact, Dr. Smith's records indicated Broussard had normal strength, sensation, reflexes and gait on virtually all visits from September 2009 throughout 2010 and into

2011.  [11, pp. 395-401, 381-383, 391-394]  The record is devoid of any opinion from Dr. Smith that Broussard was incapable of doing any work.  As the ALJ stated, "No treating source opined vocational restrictions."  [11, p. 32]

Dr. Aldridge at least twice stated Broussard could return to work with some restriction – on March 19, 2009 (the day after he first saw Broussard), and again on April 6, 2009.  [11, pp. 337, 341, 347]  Both Dr. Aldridge and Dr. Smith encouraged Broussard in August, October and December 2009, January 2010, and February 2011 to increase his activity and exercise, and participate in physical therapy.  [11, pp. 352, 355, 357, 358, 381, 383]  In addition, Broussard's admitted activities - housekeeping, laundry, cooking, shopping, caring for his own and his four-year-old son's needs, going fishing once a week, even driving to New Orleans for a trip to the zoo - support the ALJ's finding that Broussard was capable of light work.  Broussard identified no record evidence that any physician deemed him unable to work before April 11, 2011. Furthermore, the ALJ noted Broussard initially denied having a problem with drugs, but later conceded he had been a heroin addict and crystal meth user, and the medical records in evidence show his doctors spent significant effort trying to wean him from narcotic drugs.  The ALJ adequately explained his reasoning for finding Broussard less than fully credible.  While Broussard does have impairments, the "suffering of some impairment does not establish disability; a claimant is disabled only if [he] is 'incapable of engaging in *any* substantial gainful activity.'" *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992).  The existence of an impairment neither equates to, nor requires a finding of, disability under the Act.  See *Kraemer v. Sullivan*, 885 F.2d 206, 208 (5th Cir. 1989).

## RECOMMENDATION

Based upon consideration of the entire record of proceedings below and controlling law, the undersigned is of the opinion that the Commissioner's final decision is supported by

substantial evidence and in accord with relevant legal standards.  The undersigned therefore recommends the decision of the Commissioner be affirmed.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Under Rule 72(a)(3), *Local Uniform Civil Rules of the United States District Courts for the Northern District of Mississippi and the Southern District of Mississippi*, after service of a copy of this Report and Recommendation, each party has fourteen days to serve and file with the Clerk any written objections to it.  Within seven days of service of objections, the opposing party must either serve and file a response or notify the District Judge that he does not intend to respond to the objection.  An objecting party must specifically identify the findings, conclusions, and recommendations to which he objects; the District Court need not consider frivolous, conclusive, or general objections.  A party who fails to file written objections to the proposed findings, conclusions, and recommendations within fourteen (14) days of being served a copy is barred, except upon grounds of plain error, from attacking on appeal any proposed factual finding or legal conclusion accepted by the District Court to which he did not object.  *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

Signed, this the 24th day of January, 2017.

/s/ *Robert H. Walker*
ROBERT H. WALKER
UNITED STATES MAGISTRATE JUDGE